817 So.2d 1187 (2002)
Billie J. CRUMP, Plaintiff-Appellee,
v.
BANK ONE CORPORATION, et al., Defendants-Appellants.
No. 35,990-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 2002.
*1188 Sharp, Henry, Cerniglia, Colvin & Weaver, by Charles E. Weaver, Homer, Cashe, Lewis, Moody & Coudrain, by Andre G. Coudrain, Hammond, C. Sherburne Sentell, III, Minden, for Plaintiff Appellee Billie J. Crump.
Pettiette, Armand, Dunkerman, Woodley, Byrd & Cromwell, by Leland David Cromwell, for Defendant Appellee Bank One Corporation.
Before WILLIAMS, STEWART and PEATROSS, JJ.
STEWART, Judge.
At issue in this appeal by the defendant, First Guaranty Bank (hereinafter "FGB"), is the propriety of a default judgment in favor of the plaintiff, Billie J. Crump, awarding her the face value of a money market certificate plus accrued interest and expenses. FGB argues that because it filed discovery responses into the record and because Crump failed to establish a prima facie case of liability, the trial court erred in confirming the default judgment. FGB also argues that the trial court abused its discretion in denying a motion for a new trial. For the following reasons, we affirm the trial court's judgment.

FACTS
On March 21, 1994, Billie J. Crump deposited $17,000 with Homer National Bank in Claiborne Parish as evidenced by an original money market certificate bearing number 11540. Alleging negligence, fraud, and breaches of contract and fiduciary *1189 duty, Crump filed the instant suit on November 6, 2000, after the successors to Homer National Bank denied having any record of her account. Homer National Bank had merged with Premier Bank in 1995. Thereafter, Premier Bank changed its name to Bank One, Louisiana, National Association (hereinafter "Bank One") as of June 3, 1996. In 1999, Bank One conveyed its branch location in Homer to FGB, which also acquired the assets and assumed the deposit liabilities of the Homer branch according to certified copies of records from the Office of Financial Institutions. Thereafter, FGB began operating in Homer. Crump named both Bank One and FGB as defendants in her suit.[1]
Bank One answered Crump's petition. FGB did not. Instead, on November 27, 2000, FGB filed into the record its responses to Crump's discovery requests, which had been served with the petition and accompanied by a court order to respond within thirty days after service of the petition. In its answers to interrogatories and requests for admissions, FGB denied having any record of Crump's account and denied liability. However, when FGB failed to answer Crump's petition, she obtained a judgment of preliminary default against FGB on January 18, 2001. This judgment was confirmed after a hearing on February 5, 2001.
At the confirmation hearing, Crump testified that she deposited the money and obtained the money market certificate on March 21, 1994. A copy of the original certificate, which Crump had in her possession, was introduced into evidence. The certificate, which is marked non-negotiable and non-transferable, bears interest at a rate of 4% per annum to be added to the principal monthly and includes provisions for renewal in the absence of notice otherwise by either the depositor or the bank. Crump testified that she last received information regarding her account on March 20, 1995, in the form of an IRS form 1099 interest statement issued by Premier Bank. This statement was also introduced into evidence along with prior notices from Homer National Bank. Crump, who had several certificates with different banks, testified that she first noticed that she had not been receiving any information on her account when dealing with her 1999 taxes. By this time, FGB had begun operating as a successor to Homer National Bank and Bank One. Crump spoke with Carolyn Guinn, an FGB employee who had also been employed by Homer National Bank and had assisted Crump when she opened the money market account. Guinn checked the computers and informed Crump that FGB had no record of the account. Crump also presented the testimony of Robert L. Edstrom, a certified public accountant, who calculated the interest due on the certificate and testified that the value of Crump's account would be $23,666.28. Other documentation presented in support of Crump's claim included certified copies of records evidencing the merger of Homer National Bank with Premier, the name change to Bank One, and the sale to FGB.
In response to the confirmation of the default judgment, FGB filed a motion for a new trial on the grounds that it had filed discovery responses in which it denied liability, that it had not received notice that Crump was proceeding to obtain a judgment by default, and that the judgment was contrary to the law and evidence. The trial court denied FGB's motion for a new trial. This appeal by FGB followed.

*1190 DISCUSSION
Confirmation of a default judgment requires "proof of the demand sufficient to establish a prima facie case." La. C.C.P. art. 1702(A). A prima facie case is established when the plaintiff proves the essential allegations of the petition, with competent evidence, to the same extent as if the allegations had been specifically denied. Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254 (La.1993); Carroll v. Coleman, 27,861 (La.App.2d Cir.1/24/96), 666 So.2d 1264. The plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at trial. Id.
An appellate court's review of a default judgment is restricted to a determination of the sufficiency of the evidence offered in support thereof. However, the presumption that a default judgment was rendered upon sufficient evidence does not apply where the testimony is transcribed and included in the record. In such a case, the reviewing court can determine from the record whether the judgment was based on sufficient and competent evidence. Carroll v. Coleman, supra; Meshell v. Russell, 589 So.2d 86 (La.App. 2d Cir.1991).
FGB first argues that Crump did not establish a prima facie case as required for confirmation of a default judgment. In support of this argument, FGB relies on its denial of liability in its discovery responses, which FGB describes as evidence contrary to Crump's claims. FGB also relies on the fact that Crump last received information about her account in 1995, prior to FGB's operations in Homer, and the fact that Crump's documentary evidence does not specifically list the deposit liabilities or assets transferred from Bank One to FGB.
After careful review of the record, specifically the evidence presented by Crump in support of the confirmation of the preliminary default, we find that Crump did provide proof of her demand sufficient to establish a prima facie case against FGB. Crump presented the original money market certificate, a copy of which was introduced into evidence. The certificate, which was for an initial term of 91 days, includes provisions for automatic renewal in the absence of notice from either the depositor for payment or the bank if it elects not to renew. The certificate also provides that the interest would be added back on a monthly basis. As such, Crumb had no obligation but to allow her money to remain in the account accruing interest over the years. Crump, who testified that she had accounts with different banks, did not notice that she had not been receiving information about the money market account until she had to deal with her 1999 taxes. She presented her original certificate to FGB and was told that it had no record of the account. According to Crump's petition, she sought information from Bank One which also claimed to have no record of the account.
In addition to her own testimony and the money market certificate, Crump also presented certified documentary evidence establishing Premier Bank, Bank One, and FGB as successors to Homer National Bank. This documentary evidence shows the merger between Homer National Bank and Premier Bank, as well as the name change from Premier Bank to Bank One. The fact that Crump's last notice regarding her account was received in 1995, after the merger between Homer National Bank and Premier, shows that Crump's account was being serviced as a deposit liability by the post-merger banking entity. The certified records from the Office of Financial Institutions include a letter dated August 14, 1998, from Chaffe & Associates, a banking consultant acting on behalf of FGB, which states that FGB entered into an agreement with Bank One "to acquire *1191 the assets and assume the deposit liabilities of certain branches." There is also a NOTICE OF PROPOSED ACQUISITION OF ASSETS AND ASSUMPTION OF DEPOSIT LIABILITIES AND ESTABLISHMENT OF BRANCHES which states that FGB gives notice that it has applied with the FDIC and the commissioner of the Office of Financial Institutions "to acquire the assets and assume the deposit liabilities of certain branches of Bank One." The notice specifically lists the Homer location of Bank One and further provides that FGB has applied to establish branches at the listed locations and that "it is contemplated that all branches listed above will continue to be operated."
The evidence presented by Crump at the confirmation hearing not only shows FGB to be a successor to Homer National Bank, but it also shows that FGB, through its purchase of the Homer location of Bank One, assumed the deposit liabilities associated with that bank. The deposit liabilities would include the account belonging to Crump as evidenced by the money market certificate in her possession. It is well-established that a bank and its depositor stand in a debtor-creditor relationship which is contractual in nature. Schoen v. Walling, 31,598 (La.App.2d Cir.2/24/99), 728 So.2d 982. As such, FGB as successor to Homer National Bank and Premier/Bank One incurred the contractual obligations, including that owed to Crump, stemming from the deposit liabilities acquired through its purchase as shown by the records in evidence. In her petition, Crump alleges breach of contract and negligence as causes of action against the defendants. The evidence convinces this court of the probability that Crump would prevail at a trial on the merits of her claims against FGB based on its failure to locate Crump's account and to honor the contractual obligation evidenced by the money market certificate. Accordingly, we find the evidence sufficient and competent to support the default judgment against FGB.
FGB also argues that the trial court erred in allowing Crump to proceed with confirmation of the preliminary default because it had made an appearance in the record by filing answers to Crump's discovery requests. FGB argues that its discovery responses are tantamount to an answer because they are in the form of pleadings and include denials of liability which cast doubt on Crump's claims. Moreover, FGB contends that because it made an appearance of record, it was entitled to notice which it did not receive.
FGB relies on Seelig v. Kit World Super Store, Inc., 97-1592 (La.App. 4th Cir.1/21/98), 705 So.2d 806, as support for its argument that its discovery responses constitute an appearance in the record. That reliance is misplaced because Seelig involved a defendant who actually filed an answer on an answer form supplied by a clerk of court's office. At issue in Seelig was the sufficiency of the answer, which the appellate court described as "at best, inartfully drawn" but found sufficient to preclude a default judgment. The Fourth Circuit wrote that "a default judgment is not a correct remedy for a pleading which does not measure up to the requirements of the Code of Civil Procedure." Seelig, supra. Noting that a default judgment is a harsh remedy, the court also stated that where a "reasonable question" exists as to whether a defendant has answered, doubt should be removed before entering a default judgment. Id.
In this instance, FGB simply failed to file an answer. Even though its discovery responses were captioned with the case name, docket number, and court, there was no question or confusion as to whether FGB's responses were in answer to the petition. FGB's discovery responses were clearly captioned as answers to the discovery *1192 requests by Crump and not as answers to her petition. The denials of liability expressed by FGB in its responses were in answer to specific interrogatories and requests for admissions of fact propounded by Crump. The denials of liability were not in response to Crump's petition.
Having concluded that the discovery responses filed by FGB are not sufficient as an appearance or answer so as to preclude the harsh remedy of a default judgment, we also conclude that the filing of the discovery responses did not entitle FGB to notice of Crump's intent to take a default judgment. As amended by Acts 2001, No. 512 § 1, La. C.C.P. art. 1702(A) now provides, in pertinent part:
When a judgment of default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default.
According to the 2001 comments, Article 1702 was amended to conform the default procedure to the rationale of Russell v. Illinois Central Gulf Railroad, 96-2649 (La.1/10/97), 686 So.2d 817, which held that confirmation of a default judgment without notice against a party that had filed pleadings constituting an appearance of record was an ill practice. The comments further explain that "appearance of record" is intended to have the same meaning as in La. C.C.P. art. 1671. The 1997 comments under La. C.C.P. art. 1671, which pertains to voluntary dismissals, refers to appearance of record as including "filing a pleading, appearing at a hearing, and formally enrolling as counsel of record."
In Russell, supra, the party against whom the default judgment was rendered had participated in the ongoing litigation by filing a motion for extension of time and a dilatory exception of vagueness in response to the plaintiff's original petition. When the exception of vagueness was granted, the parties entered a consent judgment allowing the plaintiff additional time to file an amended petition and the defendants additional time to answer. The plaintiff filed an amended petition, which the defendant failed to answer. Without attempting to contact the defendant's attorney, the plaintiff obtained a default judgment. The supreme court found the failure to attempt to notify opposing counsel in this ongoing petitory action of the intent to take a default judgment to be an ill practice under La. C.C.P. art. 2004. The court noted that opposing counsel had participated in the litigation proceedings, had inadvertently failed to file an answer to the amended petition, and had been actively attempting to defend the property rights at issue.
In this instance, the only action taken by FGB was the filing of discovery responses into the record. It did not file pleadings, appear at a hearing, or have an attorney formally enroll as counsel of record in these proceedings prior to confirmation of the default judgment. Also, the facts here do not involve ongoing litigation as in Russell, supra. FGB's failure to file an answer was without excuse or good cause. As a sophisticated litigant, FGB should be fully aware of the need to answer a petition and the consequences which arise from the failure to do so. Its actions in this matter do not amount to either an appearance in the record or participation in litigation which would require notice before confirmation. Accordingly, we find that the trial court did not err in allowing Crump to proceed with the confirmation *1193 of the default judgment notwithstanding the discovery responses filed by FGB.
Lastly, FGB argues that the trial court abused its discretion in denying its motion for a new trial. FGB argues that the "interests of justice" necessitate a new trial because its discovery responses raise a contested issued as to its liability for Crump's account. FGB's argument in support of a new trial again questions the adequacy of Crump's case against it in confirming the default judgment.
In reviewing the denial of a motion for a new trial after proper confirmation of a default judgment, the reviewing court must be particularly cautious in examining the circumstances underlying the judgment. Thibodeaux v. Burton, 538 So.2d 1001 (La.1989); Lamb v. Lamb, 430 So.2d 51 (La.1983); Hickman v. Wm. Wrigley, Jr. Co., Inc., 33,896 (La.App.2d Cir.10/4/00), 768 So.2d 812. The trial court has much discretion in determining if a new trial is warranted, and its ruling cannot be set aside except in a case of a manifest abuse of that discretion or where the facts convince the reviewing court that a miscarriage of justice would result. Lamb, supra; Hickman, supra. The trial court's denial of new trial will not be disturbed on appeal even though the defendant may assert in his motion for a new trial that he has a meritorious defense. Carroll v. Coleman, supra. Additionally, the mere failure to file an answer, without more, is not adequate grounds to grant a new trial. Lamb, supra; Carroll v. Coleman, supra.
We have already determined that the default judgment was supported by sufficient evidence to establish a prima facie case against FGB. Thus, we do not find that the judgment was clearly contrary to law and evidence as required for a new trial under La. C.C.P. art. 1972. When the trial court confirmed the default judgment, FGB's discovery responses which included denials of liability were in the record. In its discovery responses, FGB denied liability and denied acquiring Crump's account. The evidence produced by Crump indicates otherwise as has been previously discussed. Additionally, in opposition to FGB's motion for a new trial, Crump introduced the "Office Purchase and Assumption Agreement" between Bank One and FGB which specifies FGB's assumption of Bank One's obligations and duties relating to deposit liabilities. The deposit liabilities are defined as "all of BANK ONE's obligations, duties, and liabilities of every type and character relating to all deposit accounts...." Deposit accounts include money market accounts and certificates of deposit. This documentary evidence of FGB's assumption of all of Bank One's obligations with regard to all deposit accounts is in direct opposition to FGB's assertion of no liability. We do not find FGB's denial of liability in this matter to be good ground for the granting of a new trial under La. C.C.P. art. 1973. The interests of justice do not necessitate a new trial in this matter. Accordingly, we find no abuse of discretion in the trial court's denial of a new trial for FGB.

CONCLUSION
For the reasons expressed, we affirm the judgment of default in favor of the plaintiff, Billie Crump, at appellant's costs.
AFFIRMED.
PEATROSS, J., dissents with written reasons.
PEATROSS, J., dissenting.
I respectfully dissent because I do not believe that the judgment of default in this case was confirmed by sufficient proof to establish a prima facie case as required by La. C.C.P. art. 1702(A).
*1194 Although FGB did not file an answer, it did file in the record answers to Crump's interrogatories and responses to requests for admissions and production of documents. In the answers to Crump's interrogatories, FGB denied any liability for, or knowledge of, the money market certificate. Specifically, in Answer to Interrogatory No. 5 pertaining to the relationship between FGB and Bank One, FGB stated as follows:
There was no merger between First Guaranty Bank and Bank One. First Guaranty Bank acquired certain assets of Bank One. The certificate of deposit at issue was not included in the transaction between First Guaranty Bank and Bank One.
In addition, Bank One answered Crump's petition and denied the following allegation in Crump's petition, to-wit:
Allegation No. 22.
On information and belief, First Guaranty Bank acquired all accounts and outstanding obligations of Bank One, including but not limited to, the responsibility to maintain accountability of plaintiff's said account as well as the accruing interest.
It should be noted that the money market certificate at issue in this case only establishes a contractual obligation on the part of Homer National Bank. In addition, the evidence reflects that there was no merger between Bank One and FGB. Crump's Exhibit P-1 is a cash sale deed between Bank One and FGB and it clearly conveys only real estate. Crump's in globo Exhibit P-2 contains copies from the Louisiana Office of Financial Institutions. These exhibits do not list with specificity any deposit liabilities transferred from Bank One to FGB.
The copy of the money market certificate, filed as Exhibit P-3, is dated March 21, 1994. Following the purchase of the money market certificate, Crump would receive periodic notices from Homer National Bank reflecting the status of the certificate, including the amount of any interest accrued under the terms of the certificate. The last notice received by Crump from Homer National Bank was dated March 20, 1995, and reflected accrued interest to date for the year 1995 in the amount of $196.51. (See in globo Exhibit P-4.) IRS Form 1099 sent by Premier Bank[1] to Crump reflected interest income for the entire year 1995 in that amount. (Exhibit P-6.) According to the testimony of Crump at the confirmation of default hearing, this was the last notice of any type that she received pertaining to the money market certificate.
The record is barren of any evidence that FGB ever specifically assumed any liability for the Crump money market certificate dated March 21, 1994; and, to the contrary, Crump testified at the confirmation hearing that a representative of FGB denied any record of the said certificate.
For the reasons stated above, it is reiterated that I respectfully dissent because I believe that Crump has failed to establish a prima facie case to warrant confirmation of judgment of default. I would reverse and remand to the trial court for further proceedings.
NOTES
[1] In her original petition, Crump named Bankone Corporation as a defendant. She later filed an amended petition correctly naming Bank One, Louisiana, National Association as the proper defendant.
[1] In globo Exhibit P-1 reflects that Premier Bank merged with Homer National Bank on November 30, 1995.