874 So.2d 391 (2004)
Ernest CAMPBELL, Plaintiff-Appellee,
v.
SELECT CAR COMPANY, INC., Defendant-Appellant.
No. 38,443-CA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
Rehearing Denied June 17, 2004.
Bodenheimer, Jones, Szwak & Winchell, LLP, by David A. Szwak, Shreveport, for Appellant.
Legal Services of North Louisiana, by Henry Allyn Sale, for Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
CARAWAY, J.
This appeal results from a default proceeding in city court. The defendant filed a motion for new trial arguing that his answers to discovery requests filed prior to the default, his receipt of formal notice of trial before the default, and his communications *392 with plaintiff's counsel concerning the trial setting tainted the process leading to the default judgment requiring its nullification. After hearing evidence, the trial court rejected defendant's request to nullify the default judgment. We now reverse because of the ruling of the Louisiana Supreme Court in Russell v. Illinois Central Gulf R.R., 96-2649 (La.1/10/97), 686 So.2d 817, and the notice requirement of La. C.C.P. art. 1702(A) which resulted from that ruling.

Facts
On April 28, 2003, Ernest Campbell ("Campbell") purchased a 1993 Cadillac DeVille with 83,738 miles from the Select Car Company, Inc. ("Select") dealership for $6,050 cash. Within three weeks of buying the car, Campbell called James San Angelo ("San Angelo"), who owned the dealership, and described problems with the car's transmission. San Angelo referred him to the provisions of the vehicle service contract which he purchased when he bought the car. Shortly thereafter, a transmission repair shop fixed the transmission for about $2,400. The vehicle service contract reimbursed Campbell $1,500 of this amount, leaving him to shoulder the $900 difference.
Dissatisfied with this result, Campbell had his attorney send Select a demand letter requesting rescission of the sale and return of the purchase price. Upon receipt of the demand letter in early July, San Angelo telephoned the attorney and told him "he wasn't paying anything."
Thereafter, suit was filed in Shreveport City Court, claiming that Select sold Campbell a defective vehicle in violation of the Magnuson-Moss Warranty Act, constituting unfair and deceptive trade practices. The petition, along with citation, interrogatories, and requests for production, was personally served on San Angelo, Select's registered agent for service of process, on July 18, 2003. The record reflects that San Angelo filed a response, consisting of San Angelo's cover letter to Campbell's counsel and answers to 24 interrogatories and 17 requests for production of documents. The clerk's minute entry concerning these discovery responses, confusingly reads as follows: "Answer filed by Defendant on 07/29/03."
Following Select's actions, Campbell's counsel initially requested a trial setting for August 14; but after realizing he was unavailable that day, he requested a resetting for August 28. The clerk's office mailed San Angelo the following notice of trial dated August 6, 2003:
To: Select Car Company, Inc.
This is to notify you that the above numbered and entitled suit has been set on the docket on the date of August 28, 2003, at 2:00 PM in Court Room `5' for TRIAL.
Please be present at the above stated time and date.
S/Deputy Clerk of Court
In his testimony at the later hearing on the motion for new trial, San Angelo described the sequence of events leading up to the trial date:
Q. Well did you come to court on August the 28th, 2003?
A. No. Because at about noon on August 27th Mr. Sale called me and said you know that this has been postponed or canceled for a new hearing and I asked him why and he said because you didn't answer all the questions to the suit.
Q. And what did you say back to him?
A. I said well I need to know what's done wrong so I can correct this. And I waited I presume that I would get a new hearing at a later date.

*393 Q. Did you ever receive another notice?
A. No. The next thing I know that on August I mean on the September the 3rd the uh City Marshal's brought me a statement of judgment. And I was really shocked because I was expecting to go to a hearing at some time or another....
San Angelo's testimony was corroborated by the following minute entries of August 27:
CORRECT MINUTES: DEFENDANT FILED ANSWERS TO THE SET OF INTERROGATORIES ON JULY 29, 2003.
CASE PASSED TO BE RE-SET, AS PER ATTORNEY SALE, TRIAL SET IN ERROR, ATTORNEY REQUEST CASE TO BE SET FOR CONFIRMATION HEARING (COPY OF CASES CITED), PER FAX COPIES.
The very next day's minute entry states, "default scheduled for 9/02/2003 at 9:00 a.m." Thereafter, on September 2, the case was called up for confirmation of default. The defendant failed to appear and a default judgment was entered in Campbell's favor.
After San Angelo was served with the notice of judgment, he wrote the following letter to the trial court:
The answers to the interrogatories were done in all honesty and sincerity but was unaware there was a right way and wrong way to answer the questions and this would cause us to end up in default.
Attorney Al Sale called me to advise me the court date had been postponed and a new court date would be set. I called the Clerk's office and was advised the court date had been postponed. I was not aware there was going to be a hearing neither was I contacted by anyone to let me know of a date or time. If I had known I would have been present.
I was also informed by Attorney Sale I would have to have an attorney to represent me since I was a corporation.
I would like to have this judgment set aside and request a new hearing and/or trial date.
The trial court denied this request on September 5, 2003. The same day, Select's newly enrolled counsel filed a motion for new trial. The evidence and testimony at the hearing on the motion revealed San Angelo's belief that no trial would take place without further notice, Sale's warning to San Angelo to obtain counsel, and that Select received no further written or formal notice of the September 2 proceeding which resulted in the default judgment from either Sale or the clerk of court.

Discussion
A new trial may be granted in any case if there is good ground therefor. La. C.C.P. art.1973; Bates v. Legion Indent. Co., 01-552 (La.App. 1st Cir.2/27/02), 818 So.2d 176; Meshell v. Russell, 589 So.2d 86 (La.App. 2d Cir.1991). In cases involving a motion for new trial after rendition of a default judgment, public policy considerations weighing in the defendant's favor dictate that every litigant should be allowed his day in court. Bates, supra; Meshell, supra. Nevertheless, the burden is on the defendant to prove that the default judgment should be set aside because of an improper practice justifying his failure not to timely plead.
A final judgment obtained by fraud or ill practices may be annulled. La. C.C.P. art.2004. This article is not limited to cases of actual fraud or wrongdoing, but is sufficiently broad enough to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, *394 to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. Russell, supra. In Russell, the defendant was defaulted after filing a motion for extension of time and a dilatory exception. The granting of the exception resulted in the amendment of the petition which the defendant then failed to answer. The court found that the default judgment should be nullified for an ill practice pursuant to La. C.C.P. art.2004. The court stated that under the circumstances, the default judgment was improper "without attempting to notify the opposing attorney when the opposing attorney had participated in the litigation proceedings... "Id. at 819.
In view of the ruling in Russell, the provisions of La. C.C.P. art. 1702(A) regarding confirmation of a default judgment were amended to provide for notice of an impending default judgment to defendants who made an appearance in the case. As amended, the Article now provides:
When a judgment of default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default.
Clearly, the express language of Article 1702(A) would apply if this case proceeded in district court instead of city court. There is no evidence in the record showing such notification to Select by certified letter. As a trial court of limited jurisdiction, city courts are governed by the special rules of procedure found in Book VIII of the Code of Civil Procedure and "as far as practicable" by the other provisions of the Code, including Article 1702. Nevertheless, the special rule for city court contained in Article 4904(A) provides that "no prior default is necessary" for the rendition of default judgments. Therefore, the so-called "preliminary default" entered under La. C.C.P. art. 1701(A) applying to default judgments in district courts is not operable in city court.
Thus, in a technical sense, notice of the entry of a preliminary default specified in the language of Article 1702(A) and resulting from the ruling in Russell, does not fit the actual procedure for obtaining defaults in city court. Nevertheless, while Select was not entitled to the precise notice of Article 1702(A) in city court, the absence of notice after his appearance in the proceeding remains an ill practice under the Russell ruling, requiring the nullity of the default judgment. Additionally, we note that Select was given actual notice of trial in this case which implied the issue was joined in the suit and that the threshold warning of initial citation pursuant to La. C.C.P. art. 1202(5)answer the suit or be defaultedno longer applied.
Accordingly, for the foregoing reasons, the trial court abused its discretion in failing to grant the motion for new trial and failing to nullify the default judgment for lack of proper notice to the defendant. The judgment is reversed with costs assessed to appellee.
REVERSED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, CARAWAY, and MOORE, JJ.
Rehearing denied.