906 So.2d 1276 (2005)
POWER MARKETING DIRECT, INC., Plaintiff-Appellee
v.
Chris FOSTER, Defendant-Appellant.
No. 39,777-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*1277 Sharp, Hymel, Cerniglia, Colvin, Weaver & Davis, L.L.C., by James H. Colvin, Jr., Baton Rouge, for Appellant.
Hudson, Potts & Bernstein, L.L.P., by Jan P. Christiansen, Monroe, for Appellee.
Before DREW, MOORE and LOLLEY, JJ.
MOORE, J.
Chris Foster appeals a summary judgment that annulled his default judgment against Power Marketing Direct Inc. For the reasons expressed, we reverse.

Procedural Background
In October 2001, Foster signed a license agreement with Power Marketing, a furniture retailer domiciled in Ohio. This granted Foster the exclusive right to sell Power Marketing's furniture and bedding in "Ouachita County in Monroe, LA." It also gave Foster access to certain "intellectual property" and required him to maintain *1278 adequate inventories of Power Marketing products. Most significantly, the agreement contained a covenant not to compete and a "choice of law and forum" clause selecting Ohio law and designating Franklin County, Ohio, as the jurisdiction for any lawsuit arising from the agreement.
According to Power Marketing, in early 2002 Foster began another business that directly competed with Power Marketing in the Monroe area. It filed a complaint against him on May 22, 2002, in the Common Pleas Court of Franklin County, Ohio, urging breach of contract and violation of Ohio's Uniform Trade Secrets Act. Foster answered this complaint with the affirmative defenses of fraudulent inducement and material breaches of Power Marketing's obligations under the agreement.
While the Ohio case was pending, Foster filed the underlying suit on May 12, 2003, in the Fourth Judicial District Court, Ouachita Parish. This demanded damages for breach of contract; it also sought declarations that the non-competition and choice-of-law clauses violated Louisiana public policy and the Louisiana Unfair Trade Practices Act, respectively.
According to Foster's statement of uncontested facts, he served Power Marketing under the Long-Arm statute by sending a copy of his petition by certified mail to the company's registered agent in Ohio, Jeffrey Hosking.[1] Hosking refused to accept it; he returned the letter "refused." Power Marketing filed no responsive pleading and made no appearance in the Fourth JDC proceeding.
Foster took a preliminary default on July 10 and, without advising Power Marketing's counsel in Ohio, confirmed it on July 31, 2003. By the default judgment, the district court declared the non-competition clause null and void as against public policy and the Louisiana Unfair Trade Practices Act. The judgment also awarded Foster damages of $25,000.
Apparently after receiving notice of the Louisiana judgment, Power Marketing appealed. By unpublished opinion, this court affirmed in part and reversed in part. Foster v. Power Marketing Direct Inc., 38,452 (La.App. 2 Cir. 5/12/04), 874 So.2d 436 (table). The court held (1) the Fourth JDC had subject matter jurisdiction to hear the case; (2) Foster did not make an adequate prima facie case for $25,000 damages; and (3) the non-competition clause violated Louisiana's restraint of business statute, La. R.S. 23:921 F.
While the appeal was pending, Power Marketing filed the instant suit to annul the default judgment. It conceded that its registered agent had refused service, but alleged that filing suit in Ouachita Parish was a direct violation of the license agreement; and that despite the ongoing contract litigation in Ohio, Foster never gave Power Marketing or its counsel any notice that he intended to take or confirm the default in Louisiana. Power Marketing alleged that this conduct amounted to fraud or ill practices, warranting annulment under La. C.C.P. art. 2004.
Foster filed a motion for summary judgment, arguing that he had complied with every requirement for confirming a default judgment and that lack of notice is not fraud or ill practice. Just because he knew that Power Marketing was represented by Ohio counsel in the Ohio suit, he contended, he was under no obligation to inform counsel of the Louisiana proceedings. In support he cited Mossy Motors Inc. v. Cameras America, XXXX-XXXX (La.App. 4 Cir. 6/25/03), 851 So.2d 336.
*1279 Power Marketing filed its own motion for summary judgment, reiterating, "Although Chris Foster knew that Power Marketing had attorneys representing it in connection with litigation over the same issues in Ohio, he did not notify Power Marketing or its attorneys of the new lawsuit filed in Louisiana." In support, it cited Conerly v. Jefferson, 2001-2220 (La.App. 4 Cir. 5/29/02), 820 So.2d 1173, for the principle that the plaintiff's failure to notify the defendant of his intention to confirm a default was an ill practice.
After a hearing, the district court rendered oral reasons for judgment on October 15, 2004.[2] The court noted that refusal of service constitutes valid service of process, but that default judgment presupposes notice of the proceeding. Citing Russell v. Illinois Central Gulf R. Co., 96-2649 (La.1/10/97), 686 So.2d 817, the court found that "ill practice" under Art. 2004 included confirming a default without notifying defense counsel. The court rendered judgment annulling the default judgment. Foster filed the instant appeal on November 24, 2004.
After the appeal was lodged with this court, the district court filed a written per curiam on January 18, 2005, "to amplify somewhat the court's oral reasons for judgment." This document stated that Foster violated his agreement concerning choice of forum in an "attempt to secure a more favorable forum for litigation of the non-competition provision." Citing the "fortuitous refusal of the certified letter by Power Marketing's agent," the court found Foster was "in a position to go behind everyone's back and proceed to obtain a default judgment in Louisiana unbeknownst to opposing counsel or party in Ohio with whom he was still engaged in ongoing litigation." Finding these to be "bad faith actions," the court concluded that "it was incumbent upon Mr. Foster to notify his opponent that he had initiated the Louisiana litigation in order to obtain a valid default judgment and avoid commission of an `ill practice' as contemplated by our law."

Applicable Law
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Brown v. International Paper Co., 38,892 (La.App. 2 Cir. 9/22/04), 882 So.2d 1228, writ denied, 2004-2865 (La.1/28/05), 893 So.2d 78. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Racine v. Moon's Towing, 2001-2837 (La.5/14/02), 817 So.2d 21. The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. Appellate review of the grant or denial of summary judgment is de novo. Jones v. Estate of Santiago, XXXX-XXXX (La.4/14/04), 870 So.2d 1002.
A final judgment obtained by fraud or ill practices may be annulled. La. C.C.P. art. 2004 A. "Ill practice" is not limited to cases of actual fraud or wrongdoing, "but is sufficiently broad enough to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in *1280 judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable." Russell v. Illinois Central Gulf R., supra. Confirmation of a default judgment against a party that had filed pleadings constituting an appearance of record is an ill practice. Id. However, the failure to file an answer without excuse or good cause is not grounds for nullity. Crump v. Bank One Corp., 35,990 (La.App. 2 Cir. 5/8/02), 817 So.2d 1187. The action to nullify a default judgment is not suitable to restore legal rights lost through a party's negligence or failure to act. Campbell v. Select Car Co., 38,443 (La.App. 2 Cir. 5/12/04), 874 So. 2d 391, writ denied, XXXX-XXXX (La.10/15/04), 883 So.2d 1057; State v. Robinson, 31,025 (La.App. 2 Cir. 9/23/98), 718 So.2d 609, writ not cons., 98-2704 (La.12/18/98), 731 So.2d 277.
The notice required to confirm a default judgment is defined by La. C.C.P. art. 1702 A:
When a judgment of default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default.
This article was amended in 2001 to include the concept of notice to a defaulting party who has "made an appearance of record in the case." Crump v. Bank One Corp., supra. The amendment conformed the law to the holding of Russell v. Illinois Central Gulf R., supra. Id.

Discussion
By his first assignment of error, Foster urges the district court erred in finding that he owed Power Marketing any notice of intent to confirm the default judgment. He contends that because Power Marketing never made "an appearance of record in the case," Art. 1702 A's notice requirement was never triggered. He distinguishes Russell v. Illinois Central Gulf R., supra, on grounds that the defendants therein filed a motion for extension of time and a dilatory exception of vagueness, and entered a consent judgment whereby they were given 30 days to answer an amended petition, but then failed to file an answer. Foster submits that Power Marketing, by contrast, refused service and took no part in the Louisiana suit until after the default judgment. This argument has merit.
In Russell, supra, the supreme court nullified the default judgment with the following explanation:
Here, it was an ill practice for Plaintiff's attorney to obtain a default judgment without attempting to notify the opposing attorney when the opposing attorney had participated in the litigation proceedings and inadvertently failed to file an answer to Plaintiff's second amended petition. * * * In this case, the [defendants] were actively attempting to defend their property rights.
686 So.2d at 819.
Prior to Russell, courts deemed service of process as sufficient notice to the defendant that if he failed to respond, he could be cast in default judgment.[3]See, e.g., Albert v. Lirette, 394 So.2d 761 (La.App. 4 Cir.1981); Alford v. Delta Airlines Inc., 363 So.2d 78 (La.App. 4 Cir.1978); Jourdan *1281 v. Hutton, 86 So.2d 223 (La.App. 1 Cir.1956). Russell imposed, for the first time, the duty of giving notice to a defendant whose attorney "had participated in the litigation proceedings." The legislature amended La. C.C.P. art. 1702 A in 2001, as this court has previously held, "to conform the default procedure to the rationale of Russell [.]" Crump v. Bank One Corp., supra. The article is expressly limited to defendants who have "made an appearance of record in the case."
Here, Power Marketing had neither "participated in the litigation proceedings" nor "made an appearance of record in the case." Under neither Russell nor Art. 1702 A was it entitled to notice of Foster's intent to confirm his default judgment.
By his second assignment of error, Foster urges the district court erred in finding the default judgment was obtained by ill practices and thus a nullity. He contends that he followed both the letter and the spirit of the law, and such conduct should never be an "ill practice" under La. C.C.P. art. 2004. He shows that in Crump v. Bank One Corp., supra, this court narrowly construed Art. 1702 A, holding that answers to interrogatories did not constitute a general appearance that entitled the defendant to notice of intent to confirm the default. He further shows that Mossy Motors Inc. v. Cameras America, supra, is most apposite, declining to nullify a default judgment obtained even after the plaintiff knew the defendants had secured counsel. This argument has merit.
In Mossy Motors, supra, the court framed the issue as whether it was an ill practice for the plaintiff to default the defendants when the plaintiff knew they were represented by local counsel. The court discussed the policy considerations underlying Russell and Art. 1702 A, and recognized that the level of participation by defense counsel bears on the duty to provide notice. However, the court concluded:
Thus, knowledge that the defendant has legal representation is not the standard for overturning a default. The proper standard is the clear, objective and reasonably predictable standard set forth in Crump, i.e., "an appearance of record" under La. C.C.P. art. 1702 A and as defined by the 1997 Comment to La. C.C.P. art. 1671 must occur before prior notice of intent to confirm a default is required. The mere fact that a plaintiff may have knowledge that a defendant has representation is not sufficient to require notice of intention to confirm a default.
851 So.2d at 344.
Quoting from Russell, Power Marketing contends that Art. 2004 is not limited to cases of actual fraud or wrongdoing, but encompasses "all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable." It contends that several events were improper practices: despite the "technical" service of process, Power Marketing "did not know about the Louisiana lawsuit"; Power Marketing was vigorously litigating the same issues in the Ohio lawsuit, and thus "participated in the proceedings"; and the Louisiana suit was in plain violation of the choice of law and forum clause. Power Marketing also asserts that Conerly v. Jefferson is more apposite than Mossy Motors.
These arguments are not persuasive. In the first place, the court in Mossy Motors parsed its earlier opinion of Conerly v. Jefferson, supra, as well as the supreme court's writ grant in Russell, supra. It distinguished those cases on the grounds *1282 that "although the defendant in neither case had filed a timely answer, they had made their legal presence felt to a significantly greater extent than the defendants did in the instant case." This distinction is cogent and applies equally to the instant case. The claim of a plain violation of the choice of law and forum clause lacks merit; on direct appeal of the default judgment, this court found subject matter jurisdiction over the suit, an issue we decline to revisit.
As for the contention that service of process was only "technical" and deprived the company of actual notice, the responsibility for this lies with Mr. Hosking. There is nothing "unconscionable and inequitable" in making Power Marketing accept the consequences of its own president's actions.
As noted, the action for nullity does not serve to restore rights lost through a party's negligence or failure to act. State v. Robinson, supra. We acknowledge that against the backdrop of Russell, professionalism and courtesy would advocate sending notice to counsel who were vigorously asserting Power Marketing's position in another jurisdiction.[4] On de novo review, however, we cannot say that this deficiency rises to a level that enforcing the judgment would be unconscionable or inequitable. The district court erred in granting Power Marketing's summary judgment and annulling Foster's default judgment.
Finding merit in Foster's first two assignments of error, we pretermit consideration of his third.

Conclusion
For the reasons expressed, the judgment of nullity is REVERSED. The claims of Power Marketing are DISMISSED, and the judgment in Foster v. Power Marketing Direct, No. 03-2609 on the docket of the Fourth JDC, State of Louisiana, is reinstated, as amended by this court in Foster v. Power Marketing Direct, 38,452 (La.App. 2 Cir. 5/12/04), 874 So.2d 436. Trial and appellate costs are charged to Power Marketing Direct.
REVERSED.
NOTES
[1] Jeffrey Hosking also signed the license agreement as the president of Power Marketing.
[2] A different judge ruled on the motions for summary judgment than had previously confirmed Foster's default judgment.
[3] The parties conceded that Mr. Hosking's refusal to accept the certified letter did not defeat service, but constituted valid service under the Long-Arm statute. See Ahlers v. Ahlers, 384 So.2d 474 (La.App. 2 Cir.1980); McFarland v. Dippel, 99-0584 (La.App. 1 Cir. 3/31/00), 756 So.2d 618, writ denied, XXXX-XXXX (La.9/29/00), 770 So.2d 349.
[4] The Code of Professionalism, approved by the Louisiana Supreme Court on January 10, 1992, provides: "I will consult with other counsel whenever scheduling procedures are required and will be cooperative in scheduling discovery, hearings, the testimony of witnesses and in the handling of the entire course of any legal matter."