938 So.2d 662 (2006)
POWER MARKETING DIRECT, INC.
v.
Chris FOSTER.
No. 2005-C-2023.
Supreme Court of Louisiana.
September 6, 2006.
*664 Hudson, Potts & Bernstein, Jan P. Christiansen, Monroe, for Applicant.
Sharp, Hymel, Cerniglia, Colvin, Weaver & Davis, James H. Colvin, Pamela N. Breedlove, Shreveport, for Respondent.
KNOLL, Justice.
This case concerns an annulment of a default judgment against an out of state defendant, Power Marketing Direct, Inc. The unusual aspect of this case, which prompted this writ grant, is that Power Marketing Direct, Inc., had a pending lawsuit in Ohio against Chris Foster when Chris Foster filed the default judgment proceedings against Power Marketing Direct, Inc., in Louisiana, which involved the same issues and parties in the Ohio proceedings. This situation raises the legal question of whether a party's failure to give notice to an opposing party of his intent to take a default judgment against the opposing party, who is actively participating in litigation pending in a foreign jurisdiction between the same parties arising out of the same factual basis and contesting identical questions of law, constitutes fraud or ill practice under La.Code Civ. Proc. art. 2004. In this annulment proceeding brought by Power Marketing Direct, Inc., the district court found the failure of defendant, Chris Foster, to notify plaintiff, Power Marketing Direct, Inc., who had participated in the litigation in the Ohio court, but not in the Louisiana court, of the entry of his judgment of default prior to the confirmation of the judgment constituted an ill practice under La.Code Civ. Proc. art. 2004. The court of appeal reversed the judgment of nullity. We granted writ primarily to address the validity of the default judgment in the absence of notice. Power Marketing Direct, Inc. v. Chris Foster, 05-2023 (La.2/17/06), 924 So.2d 993. For the following reasons, we reverse the court of appeal and reinstate the district court's judgment, finding the judgment of default a nullity obtained by ill practices.

FACTS AND PROCEDURAL HISTORY
As noted by the district court, the facts of this case are not in dispute. On or about October 23, 2001, Chris Foster ("Foster"), a resident of Monroe, Louisiana, signed a licensing agreement with Power Marketing Direct, Inc. ("Power Marketing"), a furniture retailer domiciled in Ohio, with its principal place of business in Franklin County, Ohio. This granted Foster the exclusive right to sell Power Marketing's furniture and bedding in "Ouachita [Parish] in Monroe, LA." It also gave Foster access to certain "intellectual property" and required him to maintain adequate inventories of Power Marketing products. Most significantly, the agreement contained a covenant not to compete with Power Marketing for a period of three years following the termination of the agreement and a "choice of law and forum" clause selecting Ohio law and designating Franklin County, Ohio, as the jurisdiction for any lawsuit arising from the agreement.
According to Power Marketing, in early 2002, Foster began another business that directly competed with Power Marketing in the Monroe area. Power Marketing filed a complaint against Foster on May 22, 2002, in the Common Pleas Court of *665 Franklin County, Ohio, urging breach of contract and violation of Ohio's Uniform Trade Secrets Act, R.C. 1333.61, et seq., arguing Foster used confidential information concerning trade secrets, marketing strategies, pricing, vendor relationships and terms, and customers, which information was obtained and only available to Foster solely by reason of his agency and/or business relationship with Power Marketing. Power Marketing also sought preliminary and permanent injunctive relief and an accounting for all profits and payments derived and/or earned by Foster while unfairly competing with Power Marketing and while using Power Marketing's confidential and/or proprietary information or trade secrets.
In response, Foster filed an answer admitting the allegations of jurisdiction and venue set forth by Power Marketing in its complaint. Foster raised affirmative defenses of fraudulent inducement, arguing Power Marketing promised discounts, price breaks, prompt obtaining of merchandise, multiple suppliers, and lower markups, and material breaches of Power Marketing's obligation under the contract resulting from Power Marketing's failure to deliver merchandise timely and by not delivering promised discounts and lower markups. Foster also alleged as an affirmative defense that the non-competition clause in the contract was controlled solely by Louisiana law and was not enforceable. Additionally, Foster filed a counterclaim against Power Marketing alleging breach of contract and fraudulent inducement, arguing Power Marketing charged Foster for markups 15 to 20 percent higher than the initial contract promised and that Foster suffered $25,000 in overcharges. Power Marketing filed a reply to Foster's counterclaim, denying the allegations in the counterclaim.
While the Ohio case was pending, Foster, in clear violation of the parties' choice of law and forum clause, filed the underlying suit in Louisiana on May 12, 2003, in the Fourth Judicial District Court, Ouachita Parish ("Fourth JDC"), seeking (1) damages for Power Marketing's markup of its goods by an additional 15 to 20 percent above what it promised; (2) a declaration that Power Marketing's attempts to enforce the non-competition agreement violated the Louisiana Unfair Trade Practices Act; and (3) a declaration that the non-competition agreement was null and void as violating Louisiana public policy. The suit further alleged that the choice of law and Ohio forum clause in the agreement was unenforceable under La.Rev.Stat. 51:1418. Additionally, the petition alleged that Power Marketing had previously brought suit against Foster in Ohio seeking to enjoin him "from engaging in business similar to that of [Power Marketing]'s, pursuant to the non-competition agreement."
According to Foster's statement of uncontested facts, Foster served Power Marketing under the Long-Arm statute, La. Rev.Stat. 13:3201 et seq., by sending a copy of the Long Arm Citation and his petition via certified mail to the company's registered agent for service of process in Ohio, Jeffrey S. Hosking.[1] Hosking refused to accept the service and returned the letter. Power Marketing filed no responsive pleading and made no appearance in the Fourth JDC proceeding.
On July 10, 2003, Foster took a preliminary default and, without advising Power Marketing's counsel in Ohio, confirmed the *666 default judgment on July 31, 2003.[2] By default judgment, the district court, Judge Alvin R. Sharp presiding, declared the non-competition clause null and void as a violation of Louisiana's strong public policy against such restrictive covenants and Power Marketing's attempt to enforce the clause as a violation of Louisiana's Unfair Trade Practices Act. The judgment also awarded Foster damages of $25,000 for Power Marketing's breach of contract in inflating the markups on its goods contrary to the parties' agreement.
After receiving notice of the Louisiana judgment, Power Marketing appealed. By an unpublished opinion, the Second Circuit affirmed in part and reversed in part the district court's judgment. Foster v. Power Marketing Direct, Inc., 38,452 (La.App. 2 Cir. 5/12/04), 874 So.2d 436 (table). The court of appeal held the district court had subject matter jurisdiction to hear the case, Foster did not make an adequate prima facie case for $25,000 in damages, and the non-competition clause violated Louisiana's restraint of business statute, La.Rev.Stat. 23:921(F). The court remanded the matter for further proceedings.
While the appeal was pending, Power Marketing filed the instant suit to annul the default judgment on February 24, 2004, in the Fourth JDC. It conceded that its registered agent had refused service, but alleged that filing suit in Ouachita Parish was a direct violation of the license agreement, and that despite the ongoing contract litigation in Ohio, Foster never gave Power Marketing or its counsel any notice that he intended to take or confirm the default judgment in Louisiana. Power Marketing alleged that this conduct amounted to fraud or ill practices, warranting annulment under La.Code Civ. Proc. art. 2004.
In response, Foster filed a motion for summary judgment, arguing that he had complied with every requirement for confirming a default judgment and that lack of notice is not fraud or ill practice. Foster contended he was under no obligation to inform counsel of the Louisiana proceedings premised on the Louisiana Unfair Trade Practices Act simply because he knew that Power Marketing was represented by Ohio counsel in the Ohio suit involving the same issues. Power Marketing countered with a motion for summary judgment, reiterating its grounds for annulment.
After a hearing, the district court, Judge Wilson Rambo presiding, rendered oral reasons for judgment on October 15, 2004.[3] The district court correctly *667 noted that refusal of service constitutes valid service of process, but default judgment presupposes notice of the proceeding. Citing Russell v. Illinois Central Gulf Railroad, 96-2649 (La.1/10/97), 686 So.2d 817,[4] the court found that "ill practice" under La.Code Civ. Proc. art. 2004 included confirming a default without notifying defense counsel under the circumstances of this case. The court rendered judgment annulling the default judgment. Foster filed his appeal on November 24, 2004.
After the appeal was lodged with the Second Circuit, the district court filed a written per curiam on January 18, 2005, "to amplify somewhat the Court's oral reasons for judgment," concluding:
This Court annulled the judgment based on Mr. Foster's obvious bad faith actions taken in violation of both his agreement with Power Marketing Direct and the good faith reliance of the opposing party in the context of the ongoing Ohio litigation. Additionally, our jurisprudence qualified this activity under *668 these circumstances as an ill practice as contemplated by C.C.P. Art. 2004 and, further, mandates nullification of this invalid default judgment under C.C.P. Arts. 2002 and 1702(A).[5]
On appeal, the Second Circuit found Power Marketing had neither "participated in the litigation proceedings" nor "made an appearance of record in the case," and thus, under neither Russell nor La.Code Civ. Proc. art. 1702(A), was it entitled to notice of Foster's intent to confirm his default judgment. Power Marketing Direct, Inc. v. Foster, 39,777, p. 7-8 (La.App. 2 Cir. 6/29/05), 906 So.2d 1276, 1281. Addressing Power Marketing's claim of fraud and ill practices, the court found as for Power Marketing's contention that service of process was only "technical" and deprived the company of actual notice, the responsibility lay with Mr. Hosking and there was nothing "unconscionable and inequitable" in making Power Marketing accept the consequences of its own president's actions. Id., at p. 9-10, 906 So.2d at 1282. Although acknowledging that against the backdrop of Russell, professionalism and courtesy would advocate sending notice to counsel, who were vigorously asserting Power Marketing's position in an out of state jurisdiction, the court could not say this deficiency rose to a level that enforcing the judgment would be unconscionable or inequitable. Id., at p. 10, 906 So.2d at 1282. Thus, the court found the district court erred in granting Power Marketing's summary judgment and annulling Foster's default judgment and reversed the judgment of nullity, dismissing Power Marketing's claims and reinstating the default judgment as amended by Foster v. Power Marketing Direct, Inc., 38,452 (La.App. 2 Cir. 5/12/04), 874 So.2d 436(unpublished). Id., at p. 10, 906 So.2d at 1282.

LAW AND ANALYSIS
Summary Judgment
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact, and summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. Proc. art. 966(A)(2); Racine v. Moon's Towing, 01-2837, p. 4 (La.5/14/02), 817 So.2d 21, 24. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. Proc. art. 966(B); Racine, 01-2837 at p. 4, 817 So.2d at 24.
On a motion for summary judgment, the burden of proof is on the movant. La. Code Civ. Proc. art. 966(C)(2); Frank L. Maraist & Harry T. Lemmon, 1 Louisiana Civil Law Treatise: Civil Procedure § 6.8(3), 146-49 (1999). If, however, the movant will not bear the burden of proof at trial on the matter that is before the *669 court on the motion for summary judgment, the movant's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. La.Code Civ. Proc. art. 966(C)(2); Maraist & Lemmon, supra. Instead, the moving party must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La.Code Civ. Proc. art. 966(C)(2); Maraist & Lemmon, supra. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La.Code Civ. Proc. art. 966(C)(2); Maraist & Lemmon, supra. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment. La.Code Civ. Proc. art. 966(C)(2); Maraist & Lemmon, supra.
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the movant-appellant is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. Therefore, in the present case, our de novo review will examine whether there are any genuine issues of material fact and whether the plaintiff, Power Marketing, is entitled to judgment as a matter of law. As the facts are not in dispute, we look solely to the legal question presented by the motion for summary judgment, i.e., whether the July 31, 2003 default judgment should be set aside and declared null and void as a matter of law.
Preliminary Default
In an ordinary proceeding, the defendant in a principal or incidental action must file an answer within fifteen days after service of citation upon him, except as otherwise provided by law. La.Code Civ. Proc. art. 1001; Maraist & Lemmon, supra, § 12.3 at 325. The delay for answering may be extended by court order and is automatically extended by the filing of certain pleadings. La.Code Civ. Proc. art. 1001; Maraist & Lemmon, supra, § 12.3 at 325. However, if the defendant in the principal or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him. La.Code Civ. Proc. art. 1701(A); Maraist & Lemmon, supra, § 12.3 at 325.
The process for obtaining a default judgment is simple, and the judgment of default is sometimes referred to as the "preliminary default." Maraist & Lemmon, supra, § 12.3 at 325-26. Under La.Code Civ. Proc. art. 1702(A), the Legislature sets forth two procedures for the confirmation of a default judgment. The procedure to be utilized by the plaintiff depends upon the actions of the defendant in the case. Maraist & Lemmon, supra, § 12.3 at 326. On the one hand, if no answer is filed timely, the plaintiff may confirm the judgment of default after two days, exclusive of holidays, from the entry of the judgment of default. La.Code Civ. Proc. art. 1702(A). This judgment of default may be confirmed on the third "judicial day," i.e., after the lapse of two days, which are not judicial holidays, from the entry of the preliminary default. Maraist & Lemmon, supra, § 12.3 at 326.
On the other hand, "[w]hen a judgment of default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default *670 to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default." La.Code Civ. Proc. art. 1702(A).
Confirmation of a default judgment requires "proof of the demand sufficient to establish a prima facie case." La. Code Civ. Proc. art. 1702(A); Maraist & Lemmon, supra, § 12.3 at 326. A prima facie case is established when the plaintiff proves the essential allegations of the petition, with competent evidence, to the same extent as if the allegations had been specifically denied. Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254, 1258 (La.1993); Maraist & Lemmon, supra, § 12.3 at 326-28. The plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at trial on the merits. Sessions & Fishman, 616 So.2d at 1258; Maraist & Lemmon, supra, § 12.3 at 326-28.
If a judgment of default is confirmed before the expiration of the delay prescribed by statute, i.e., two legal days after entry of the preliminary default if no answer is timely filed or seven legal days after notice is sent if the defaulting party has made an appearance of record, the confirmation of the judgment of default is premature, and the judgment is null and invalid. See Evans v. Hamner, 209 La. 442, 24 So.2d 814, 815 (1946). A final judgment shall be annulled if it is rendered against a defendant against whom a valid judgment of default has not been taken. La.Code Civ. Proc. art. 2002(A)(2).
Additionally, a final judgment obtained by fraud or ill practices may be annulled, La.Code Civ. Proc. art. 2004(A), and trial courts are permitted discretion in deciding when a judgment should be annulled because of fraud or ill practices, to which discretion reviewing courts will defer. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983).
Ill Practices
As noted above, according to La.Code Civ. Proc. art. 2004, any final judgment obtained by fraud or ill practices may be annulled. The concepts of fraud and ill practices have been developed by our jurisprudence. In Johnson v. Jones-Journet, 320 So.2d 533, 537 (La.1975), this Court, in examining La.Code Civ. Proc. art. 2004, noted that no definition of the term "ill practices" was given, and thus, found an historical exegesis of the article was in order. The Court, with Justice Marcus as organ for the Court, explained that article 2004 was drawn primarily from article 607 of the Code of Practice, which, in addition to announcing the general rules that judgments obtained by fraud or ill practices were subject to annulment, set forth as illustrations bribery of the judge or witnesses, production of forged documents, and perjury by the party obtaining the judgment. 320 So.2d at 537. This Court further noted these illustrations were not considered exhaustive of actionable fraud or ill practices, however, and our jurisprudence had set forth two criteria to determine whether a judgment had, in fact, been obtained by actionable fraud or ill practices: (1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) the enforcement of the judgment would have been unconscionable and inequitable. Id. When the Code of Civil Procedure replaced the Code of Practice in 1960, the former rule contained in article 607 was retained as article 2004, and although the illustrations were deleted, the Court found there was no intention to change the law. Id. Hence, the analysis set forth in the jurisprudence is useful.
*671 In discussing "ill practices" under Code of Practice article 607, the predecessor of La.Code Civ. Proc. art. 2004, this Court stated:
Under the jurisprudence any improper practice or procedure which enables a party to obtain a definitive judgment comes within the meaning of this article. The courts have looked at each case from a purely equitable viewpoint to ascertain whether allowing the judgment to stand would be inequitable or unconscionable in view of the practice or procedure which enabled the party to obtain such judgment.
Alonso v. Bowers, 222 La. 1093, 1097, 64 So.2d 443, 444 (1953). This language has been clarified to mean that there need not necessarily be a showing of intentional fraud or wrongdoing for a plaintiff to prevail. Smith v. Cajun Insulation, Inc., 392 So.2d 398, 402 (La.1980). Even innocent acts which deprive a party cast in judgment of some legal right can form the basis of this nullity action. Id. Thus, the action provided by article 2004 is a distinct remedy designed to afford relief against a judgment procured by methods viewed with disdain by the judiciary.
In Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983), this Court once again analyzed La.Code Civ. Proc. art. 2004 in the context of ill practice allegations, finding
the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. . . . Conduct which prevents an opposing party from having an opportunity to appear or to assert a defense constitutes a deprivation of his legal rights. Thus, when a party fails to defend a suit because of the failure of the opposing party to warn him that a default would be taken, this judgment may be annulled when the parties had an agreement to give notice of any action taken on the suit, or the defaulted party relied on facts which he reasonably believed created such an agreement, and the enforcement of the judgment would be unconscionable and inequitable. (citations omitted).
The Kem Search court found the defendant was unfairly deprived of an opportunity to present his defenses and thereby lost legal rights because enforcement of the judgment would be unconscionable and inequitable. Kem Search, 434 So.2d at 1071. Although the defendant could have more prudently protected his rights by filing responsive pleadings to the petition, the Court concluded the enforcement of the default judgment was nevertheless unconscionable, because the defendant failed to act due to his mistaken and not unreasonable impression that the plaintiff would give him an opportunity to file pleadings if his settlement overtures were rejected and defendant's belief was fully supported by the local court custom, acknowledged by the trial court, that an attorney should not confirm a default judgment without prior notice to the opposing attorney. Id. The court concluded whether innocently or otherwise, the Kem Search attorney's confirmation of the default judgment without giving prior notice constituted an ill practice under the circumstances of the case and entitled the defendant to have the default judgment annulled. Id. at 1072.
Expounding further upon Kem Search, this Court in its writ grant in Russell v. Illinois Central Gulf Railroad, 96-2649 (La.1/10/97), 686 So.2d 817, reexamined the concept of an "ill practice," holding:

*672 The fact the Code of Civil Procedure does not mandate that counsel attempt to notify opposing counsel of his intent to seek a default judgment against opposing counsel's client does not mean that failure to do so in an on-going petitory action is not an ill practice under La.Code Civ.P. art. 2004. La.Code Civ.P. art. 2004 "is not limited to cases of actual fraud or wrongdoing, but is sufficiently broad enough to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable." Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983).
Here, it was an ill practice for Plaintiff's attorney to obtain a default judgment without attempting to notify the opposing attorney when the opposing attorney had participated in the litigation proceedings and inadvertently failed to file an answer to Plaintiffs second amended petition. In addition, a petitory action differs in kind from suit whereby a Defendant does not intend to contest the Plaintiff's claims, such as a suit on an open account. A petitory action involves the acquisition of property rights in which the litigants intend to assert their respective rights to the property involved. In this case, the DeFraites were actively attempting to defend their property rights.
Under these circumstances, we find the action of the Plaintiff's attorney in this case does constitute an ill practice under La.Code Civ.P. art. 2004. Therefore, the default judgment obtained against the Defendants is annulled. La. Code Civ.P. art. 2004.
Russell, 686 So.2d at 819.
Thus, the Russell court found it was an ill practice for an attorney to obtain a default judgment without attempting to notify the opposing attorney when the opposing attorney had participated in litigation proceedings and the defendants were actively attempting to defend their rights. Russell, 686 So.2d at 819. The Court found such even in the absence of any mandatory notification requirement and even though service of process was properly effected. Id.[6]
*673 In the present case, Foster took a preliminary default on July 10, 2003, and without advising Power Marketing's counsel in Ohio, confirmed the default on July 31, 2003. In its petition for annulment and motion for summary judgment, Power Marketing sought to have the default judgment declared null and void, arguing "although Chris Foster knew that Power Marketing had attorneys representing it in connection with litigation over the same issues in Ohio, he did not notify Power Marketing or its attorneys of the new lawsuit filed in Louisiana," and that the failure to notify Power Marketing of his intention to confirm a default was an ill practice, mandating nullification under La.Code Civ. Proc. art. 2004(A).
The core element of plaintiff's action centers upon the lack of notification, or rather, the failure of Foster to notify Power Marketing's counsel prior to confirmation. We agree that the focus of this matter is notification. As noted above, this Court in Kem Search and Russell specifically held La.Code Civ. Proc. art. 2004 is not limited to cases of actual fraud or wrongdoing, but is sufficiently broad enough to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. Kem Search, 434 So.2d at 1070; Russell, 686 So.2d at 819. These courts also found it was an ill practice for an attorney to obtain a default judgment without attempting to notify the opposing attorney when the opposing attorney had participated in the litigation proceedings and the defendants were actively attempting to defend their rights. Id.
In this case, the question becomes whether the defaulting defendant, Power Marketing, participated in the litigation proceedings and actively attempted to defend its rights so that the lack of notice of Foster's intent to take a default judgment against it constitutes an improper procedure which operated, even innocently, to deprive the party cast in judgment of some legal right and where the enforcement of the default judgment would be unconscionable and inequitable.
Power Marketing has undisputably not participated in the suit filed in the Fourth JDC. However, Power Marketing has clearly participated in the Ohio litigation by the filing of its pleading and its reply to Foster's counterclaim. Of significant interest to this Court are that the questions contested and the issues both sought to be enforced and defended by Power Marketing and Foster in Ohio are identical to those contested by Foster in the Louisiana suit. Moreover, the questions or issues contested arise out of the same contractual dispute between the same parties regarding the licensing agreement entered into between Power Marketing and Foster, which contained a choice of law and forum clause designating Ohio law and Franklin County, Ohio, as the law and forum, respectively, to which Foster agreed and has acknowledged.
Specifically, in the Ohio proceeding, Power Marketing sought preliminary and permanent injunctive relief and an accounting for profits and indemnification from Foster based on its claims for breach of contract as to the licensing agreement and violation of the Uniform Trade Secrets Act, R.C. 1333.61, et seq. In his answer to Power Marketing's complaint, Foster raised the affirmative defenses of fraudulent inducement, Power Marketing's breach of contract as to the licensing agreement by not delivering merchandise timely and by charging a higher markup on merchandise than originally agreed, *674 and that "under controlling case law the issue of whether a non-compete over a person resident [sic] in Louisiana is enforceable is controlled solely by Louisiana Law. . . . [and] [a]s such the alleged non-compete is unenforceable." Foster further filed a counterclaim against Power Marketing reiterating his claims for breach of contract and fraudulent inducement, and seeking damages in an amount not less than $25,000. Power Marketing generally denied the allegations set forth in Foster's counterclaims in its "Reply to Counterclaim."
In his Louisiana petition, which was filed in clear contravention of the parties' choice of law and forum clause, Foster alleged Power Marketing breached its contract with Foster as to the licensing agreement by charging a higher markup on the merchandise than originally agreed, that the non-competition clause in the contract violated Louisiana law and Louisiana public policy, that Power Marketing's actions constituted unfair trade practices, that the choice of law and forum clause in the contract was unenforceable pursuant to the Louisiana Unfair Trade Practices Act, and that Power Marketing's conduct rose to the level of intentional infliction of emotional distress. Thus, the issues raised by Foster to which Power Marketing replied in the Ohio court, specifically the issues of breach of contract and damages, as well as enforceability of the non-compete clause under Louisiana law, are the same as those raised by Foster in the Louisiana court. Power Marketing's reply in the Ohio court clearly indicated its intent to participate in the litigation of the contested issues of breach of contract, damages, and enforceability of the non-compete clause.
Significantly, the parties' licensing agreement contained a choice of law and forum clause, designating Ohio law and Franklin County, Ohio, as the selected law and forum. Foster in his answer filed in the Ohio litigation admitted the allegations of jurisdiction and venue set forth by Power Marketing and submitted without objection to the jurisdiction and venue of the Ohio court. Foster even went so far as to file a counterclaim raising issues he would subsequently raise in his Louisiana suit on the contract, a suit filed in clear violation of the parties' forum selection clause.
Applying the precepts announced in Kem Search and Russell, specifically that a judgment of default may be annulled when a party fails to defend a suit because of the failure of the opposing party to warn it that a default would be taken and the defaulting party relied on facts, which it reasonably believed created an agreement to give notice of any action taken on the suit, we conclude that Power Marketing was unfairly deprived of an opportunity to present its defenses and thereby lost legal rights because of a judgment whose enforcement would be unconscionable and inequitable. Here, it was an ill practice for Foster to obtain a default judgment without attempting to notify Power Marketing when Power Marketing had participated in the litigation proceedings, albeit in Ohio, and Foster was aware Power Marketing had no knowledge of the Louisiana suit.
The failure of Foster to notify Power Marketing of his intent to seek a default judgment coupled with Foster's knowledge that Power Marketing lacked notification, especially given that Power Marketing's agent refused service, and that Power Marketing was actively prosecuting and defending its rights in the Ohio litigation, operated to deprive Power Marketing of an opportunity to defend against Foster's claims for breach of contract, damages, and nonenforceability of the non-compete clause in the Louisiana suit.
*675 Furthermore, although Power Marketing could have more prudently protected its rights by accepting service, we conclude that the enforcement of the default judgment is nevertheless unconscionable, because Power Marketing failed to act due to its mistaken and not unreasonable impression that under the forum selection clause of the contract, suit would only be filed in Franklin County, Ohio. Power Marketing's belief was fully supported by the forum selection clause of the parties' licensing agreement and Louisiana law, which provides that forum selection clauses are legal and binding in Louisiana and should be enforced absent a clear showing that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching. Lejano v. Bandak, 97-0388 (La.12/12/97), 705 So.2d 158.
Additionally, Foster in his answer in the Ohio suit admitted the allegations of jurisdiction and venue set forth by Power Marketing in its complaint and filed a counterclaim in the Ohio litigation. He submitted without objection to the Ohio litigation, answered the complaint, asserted affirmative defenses, and then hired a different lawyer and filed an identical suit in Louisiana. Consequently, his actions misled his adversary and unfairly deprived Power Marketing of legal rights under a judgment whose enforcement would be unconscionable and inequitable.
Accordingly, we defer to the discretion of the district court in annulling the default judgment as obtained by ill practices, and agree Foster readily took advantage of the fortuitous refusal of the certified letter by Power Marketing's registered agent, resulting in a situation whereby service of process was technically correct and the Louisiana proceeding, identical to the Ohio proceeding, could go forward without any notice to Power Marketing unless Foster or his lawyer provided that notice to the opposing party or counsel, which they did not do. Foster's confirmation of the default without giving prior notice constitutes an ill practice under the circumstances of this case and entitles Power Marketing to have the default judgment annulled. Such a result is necessary in keeping with the spirit of Kem Search and Russell and our notions of fair play and equity.
In conclusion, we find it is an ill practice for a party to obtain a default judgment without attempting to notify the opposing party when the opposing party is participating in litigation proceedings between the parties concerning the same contract and identical issues, is actively defending its rights, and has reasonably relied on facts, which created the belief that it would be notified of any default action taken in the litigation pending between the parties.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed, and the judgment of the district court annulling the default judgment obtained against Power Marketing is reinstated.
REVERSED AND RENDERED.
KIMBALL, J., dissents and assigns reasons.
KIMBALL, Justice, dissenting.
I dissent from majority's holding that the default judgment was a nullity obtained by ill practice. The majority relies on the prior jurisprudence of this court in determining "that Power Marketing was unfairly deprived of an opportunity to present its defenses and thereby lost legal rights because of a judgment whose enforcement would be unconscionable and inequitable." Both Kem Search, Inc. v. *676 Sheffield, 434 So.2d 1067, (La.1983) and Russell v. Illinois Cent. Gulf R.R., 96-2649 (La.1/10/97), 686 So.2d 817are distinguishable from the instant case because in Kem Search and Russell the defendants were actively participating in litigation. Here, in contrast, Power Marketing refused service, and thereby effectively refused to participate in the litigation filed in Louisiana.
I believe the majority's focus on the fact that Power Marketing participated in the Ohio litigation is misplaced. I disagree that Power Marketing could ignore the litigation filed in Louisiana because it previously instituted litigation in Ohio. Moreover, Foster's attorney filed a petition in Louisiana based in part on the Louisiana Unfair Trade Practices Act. The majority describes this action as being "in clear violation of the parties' choice of law and forum clause." However, filing an action in Louisiana based on the Louisiana Unfair trade Practices Act does not clearly violate the choice of law and forum clause of the underlying contract. Foster may have reasonably contended that an action under the Louisiana Unfair Trade Practices Act constitutes a separate cause of action that is not governed by the choice of law and forum clause for the contract. Moreover, Foster's attorney may have justifiably believed that filing an action in Louisiana was necessary to protect Foster's interests.
Additionally, I disagree with the majority's conclusion that Power Marketing reasonably relied on facts which created the belief that it would be notified of any default action taken in the Louisiana proceedings. On the contrary, Foster's actions consistently indicated that he intended to pursue litigation in Louisiana. The majority states that Foster filed an answer to Power Marketing in the Ohio litigation asserting that the non-competition clause was controlled by Louisiana law. Thereafter, he filed an action in Louisiana reasserting that Louisiana law governed the litigation. During this time, the parties were currently engaged in litigation in Ohio, not settlement negotiations. Moreover, the majority points to no evidence that Foster implied he did not wish to pursue the Louisiana litigation or that Foster would notify Power Marketing of a default judgment.
It appears that the majority, in stating that the Louisiana litigation is "in clear violation of the parties' choice of law and forum clause," disagrees with the findings of the district court, in declaring the non-competition clause null and void as a violation of Louisiana's strong public policy. Nevertheless, the issue of whether or not Foster presented sufficient evidence to establish that the non-competition clause was null and void may be properly raised by a motion for a new trial or appeal, but is not a ground for an action in nullity. National Income Realty Trust v. Paddie, 98-2063 (La.7/2/99), 737 So.2d 1270, 1271-71. Thus, the issue is whether Power Marketing was unfairly deprived of an opportunity to present its defenses. In this case, the default judgment against Power Marketing was caused solely by its own refusal of service and not by any explicit or implicit suggestions by Foster that he would notify Power Marketing of a default judgment. Therefore, I respectfully dissent.
NOTES
[1] Jeffrey Hosking also signed the license agreement as the president of Power Marketing.
[2] The confirmation hearing was held on July 23, 2003, with Foster as the only witness to testify.
[3] In the annulment proceeding, the district court found:

Chris Foster entered into an agreement with Power Marketing Direct whereby he agreed to litigate any disputes arising under his contract with them in Ohio, and even named the venue. In accordance with that agreement, Power Marketing Direct filed suit in Franklin County, Ohio, on May 22, 2002. Chris Foster submitted to the jurisdiction and venue of the court without objection and set forth an affirmative defense that the non-competition clause in the parties' contract was controlled solely by Louisiana law and was not enforceable. Additionally, Foster filed a counter claim alleging breach of contract and he suffered twenty-five thousand dollars in overcharges. While that litigation was ongoing on May 12, 2003, Foster came down here, hired another lawyer and filed a lawsuit in Ouachita Parish against Power Marketing Direct which resulted in a default judgment being granted by Judge Alvin Sharp and the previous appeal to the Second Circuit. The exact same claims or causes of action were asserted by Foster against Power Marketing Direct in both Louisiana and Ohio. And as I noted, Mr. Foster got a different lawyer to handle the Louisiana litigation. Service of process in the Louisiana lawsuit was effected by certified letter under the long arm statute mailed to Power Marketing's agent for service of process, who refused the letter. Consequently, while technical service of process occurred, Power Marketing received no notice of the Louisiana proceeding. The reasons for Foster's actions can be gleaned from the Second Circuit's opinion; and they are two-fold [sic]. Basically having surveyed the situation in Ohio Foster realized he had a much better chance of having a non-competition clause of the agreement he signed invalidated in Louisiana rather than in Ohioexcuse methe agreement he signed invalidated in Louisiana rather than in Ohio. Number two. In a setting other than the confirmation of a default, Foster would have had difficulty proving his claim for damages and overcharges. That's the reason the Second Circuit felt that and held that he failed to make a prima facie showing and remanded the matter. Foster ignored the agreement that he made and the ongoing litigation in Ohio to which he had submitted without objection, got a different lawyer and filed suit in Louisiana because that was a more favorable forum. Thereafter, Foster readily took advantage of the fortutious [sic] refusal of the certified letter by Power Marketing's registered agent, resulting in a situation whereby service of process was technically correct and the Louisiana proceeding could go forward without any notice to Power Marketing unless Chris Foster or his lawyer provided that notice to the opposing party or counsel, which they did not do. This conduct falls within the purview of the Code of Civil Procedure Article 2004 and 2002, requires the annulment of Judge Alvin Sharp's judgment. Had Judge Alvin Sharp known these circumstances in addition to the bare bones record with which he was presented at the time of the confirmation of default hearing the Court is confident that the default hearing would not have been allowed to proceed. This ruling does no violence to the holding or rationale of the Second Circuit's decision regarding Judge Alvin Sharp's judgment. The Second Circuit addressed only the fact that the parties' agreement could not divest the Louisiana court of constitutionally conferred jurisdiction; and the exception of lack of subject matter jurisdiction was therefore improper. In fact, the language of the Second Circuit's opinion points out certain aspects of the situation which could and most certainly would have been raised by Power Marketing Direct had it been afforded notice of the Louisiana proceeding. The Court finds this conduct constitutes fraud or ill-practices under Article 2004 of the Code of Civil Procedure and annuls Judge Alvin Sharp's judgment accordingly.
[4] See infra section "III Practices" (examining in detail the holding in Russell in which this Court found it was an ill practice for an attorney to obtain a default judgment without attempting to notify the opposing attorney when the opposing attorney had participated in litigation proceedings and the defendants were actively attempting to defend their rights).
[5] By order dated February 10, 2005, a three judge panel of the Second Circuit denied Foster's motion to strike the per curiam, finding:

A review of the trial court's per curiam shows that it is simply, in the trial court's words, an effort "to amplify somewhat the Court's oral reasons for judgment which are already a part of the Record in this appeal." The per curiam does not amend the trial court's final judgment. Although substantive amendment of a judgment is prohibited under the provisions of La. C.C.P. art. 1951, the trial court was not prevented by the provisions of La. C.C.P. arts. 1951 and 2088 from issuing supplemental reasons for judgment.
The court did, however, allow the parties to file supplemental briefs addressing the contents of the per curiam.
[6] Merely as an aside, the Legislature through Acts 2001, No. 512 amended La.Code Civ. Proc. art. 1702, adding a third sentence to section A:

When a judgment of default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default.
The amendment specified that notice of the date of entry of the default judgment must be given to the party in default who made an appearance of record. See Digest, Acts 2001, No. 512 (2001 Regular Session Engrossed House Bill No. 720, p. 9). It was further intended to provide that "where a defendant has appeared in the case and has indicated an intent to participate in the lawsuit if they had missed a technical deadline, the plaintiff attorney cannot take a preliminary default without seven days notice by certified mail of the default." See 2001 Regular Session, Minutes of Meeting of Senate Committee on Judiciary A, May 24, 2001, p. 6 (William Forrester, Louisiana State Law Institute, speaking). Essentially, "[t]he purpose of the 2001 amendment to this Article is to conform default procedure to the rationale set forth in Russell v. Illinois Central Gulf Railroad, 686 So.2d 817 (La. 1997), that it is an `ill practice' to confirm a judgment of default, without notice, against a party that has already filed pleadings constituting an appearance of record in the litigation proceedings." La.Code Civ. Proc. Ann. art. 1702, Comments2001(a) (West 2003).