LEON A. CANNIZZARO, JR., Judge.
| Barbara Enterprises, Inc. (hereinafter “BEI”), appeals a judgment of the First City Court in favor of the plaintiff, Dali Painting & Contractors, Inc. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Mr. and Mrs. Charles Ward owned the property at 1201 Napoleon Avenue. The Wards contracted with BEI to renovate the property. The Wards consulted with Mr. Kamal Dali of Dali Painting & Contractors, Inc. (hereinafter “Dali” or “Mr. Dali”), on a price for exterior painting of the house. After the parties agreed on the job specifications and the price, the Wards sent the proposal to BEI requesting that Dali be incorporated as a subcontractor. After the exterior painting began, BEI further contracted with Dali to paint the interior and trim work in the house.
According to Mr. Ward’s trial testimony, the experience with Dali was nothing short of a nightmare. Improper caulking was used on exterior windows Land walls, poor surface preparation and inadequate primer resulted in paint failure, and an inferior refinishing process ruined 100-year-old natural woodwork.
As a result of the poor workmanship, several other contractors were used to redo the work or to attempt to repair damage caused by Dali.
Conversely, Mr. Dali testified at trial that his experience with Mr. Ward was nothing short of a nightmare — there was simply no pleasing Mr. Ward. The exterior color selected by Mr. Ward was changed after one-third of the job was completed. Further, the reason the interior trim[1] did not meet Mr. Ward’s approval was because Mr. Ward would not approve the method Mr. Dali wished to use to strip the wood because of the additional cost. Mr. Dali testified that there were many types of wood used in the house; over the years some of the baseboards had been repaired with multiple types of wood. Mr. Dali explained that the different types of wood prevented a similar or consistent appearance. Additionally, even after sanding, the old layers of varnish on the doorframes *643 and baseboards prevented proper absorption of the new varnish, resulting in a mottled appearance.
Dali filed suit in First City Court alleging that BEI still owed $13,984.00 for the work it had performed. BEI filed an answer alleging breach of contract by Dali, and a reconventional demand for additional costs it incurred as a result of Dali’s incomplete and defective work. Following a trial, the court found in favor of Dali in the amount of $13,035.00, and dismissed BEI’s reconventional demand. This appeal followed.
I..¿DISCUSSION
The first assignment of error is two-fold. The first issue raised by the assignment concerns reasons for judgment by the trial court. BEI urges this Court to either disregard or strike the reasons for judgment entered onto the trial court minutes on February 23, 2004, despite the fact that they were signed December 22, 2003, the same date as the Judgment. Counsel for BEI argues that these Reasons for Judgment were not contained in the record on either January 14, 2004, the date he filed his petition for appeal, or on January 24, 2004, the date the trial judge signed the order granting the appeal. Thus, because the trial court was divested of jurisdiction once the order granting the appeal was signed, it was improper to enter Reasons for Judgment on February 23. See La.Code Civ. Proc. art. 2088.
We find Power Marketing Direct v. Foster, 05-2023 (La.9/6/06), 938 So.2d 662, on point. In that case, the Court of Appeal, Second Circuit, reasoned that a per cu-riam entered after an appeal was granted was allowable because it simply amplified the trial court’s oral reasons for judgment.
Louisiana Code of Civil Procedure 2088 provides in pertinent part that the jurisdiction of the trial court is divested once the motion for appeal is granted. However, the trial court maintains jurisdiction for limited purposes. One such purpose is to “[cjorrect any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132.” La.Code Civ. Proc. art. 2088(4). Article 2132 provides in part: “A record on appeal which is incorrect or contains 1¿misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, ..., by the trial court.” La.Code Civ. Proc. art. 2132 (emphasis added.)
We find the entering of the reasons for judgment on February 23, 2004, is permissible for the purpose of correcting an incomplete record as provided by La.Code Civ. Proc. art. 2132.
In the second part of its first assignment of error, BEI argues that the trial court erred in granting judgment in favor of Dali because it is contradicted by objective evidence and by the inconsistencies in testimony offered by witnesses for Dali. BEI concedes that the proper standard of review is the manifest error standard set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989).
Our reading of the transcript reveals a swearing contest, with each side contradicting the testimony of the other. The trial court judge rendered her judgment based on her observation of the witnesses, finding Mr. Dali to be more credible. The manifest error standard of review does not permit a reviewing court to upset reasonable evaluations of credibility and reasonable inferences of fact, where the record merely demonstrates conflicting testimony as to the facts at issue. Elevating Boats, Inc. v. Parish of Plaquemines, 06-1208, p. 6 (La.App. 4 Cir. 2/14/07), 953 So.2d 826, 830. As *644 such, we are required to accept Mr. Dali’s version of how the events transpired during the course of the project.
| ¡According to Mr. Dali’s testimony, Mr. Ward was almost impossible to please despite Mr. Dali’s great effort to accommodate Mr. Ward’s wishes. Mr. Dali also testified that many of the problems on the job were not caused by his workers, but rather by other subcontractors working around him. For example, Mr. Dali testified that his workers did not ruin the finish of the newly restored floors with their drop cloths and tape. Rather, another subcontractor had used duct tape to hold down floor covers for their work, and when the duct tape was removed, the floor surface was damaged. Mr. Dali also testified about other workers scratching or marking the newly painted walls, causing Mr. Dali to have to come behind them and retouch those areas.
The record contains evidence of three contracts entered into by the parties. The first was for painting the exterior of the house at 1201 Napoleon. The parties agreed on a price of $11,900.00 to complete the project. A second contract was entered into for the painting of the interior of the house, including the woodwork, at a price of $19,900.00. At some point, the parties agreed that Mr. Dali would stop his attempts to finish the woodwork to Mr. Ward’s satisfaction and another painting contractor would do the work. The cost to Mr. Ward to hire another painter was $7,500.00, an amount Mr. Dali agreed to subtract from the previously agreed to contract price. The last contract entered into was for Mr. Dali to paint the garage at a cost of $2,200.00. The total of the three contracts, minus the aforementioned $7,500.00, was $26,500.00.
| fiBEI submitted proof that it paid Mr. Dali a total of $20,905.33, including a copy of a cancelled check in the amount of $5,350.00. Mr. Dali acknowledged that he had received that check but claimed it was for material and labor costs relating to the installation and painting of weatherboards, which was not in dispute. As such, Mr. Dali testified that he did not include the labor and materials costs for that work in the itemization of the amounts that he alleged were due him from BEI. Additionally, Mr. Dali testified that BEI owed him additional amounts for extra shutters ($150.00), carpentry repairs ($450.00), and extra paint color selection by the Wards ($500.00). In support of his testimony, Mr. Dali submitted copies of invoices for this work. Although this work was not detailed in any of the contracts entered into by the parties, there is evidentiary proof that the work was performed. Considering the evidence and Mr. Dali’s testimony, we cannot say the trial judge was clearly wrong in awarding Dali $13,035.00 as the outstanding balance for the work performed pursuant to the contracts.
In its last assignment of error, BEI asserts that the trial court erred in dismissing its reconventional demand for damages incurred by BEI due to Dali’s failure to complete work in a timely and satisfactory manner. Again, this Court must defer to the factual findings of the trial court that any additional costs incurred by BEI were not the fault of Dali.
Further, BEI contends in brief that it presented uncontroverted evidence that it lost approximately $39,000.00 because Mr. Ward and the financing bank withheld these funds. This total included the amounts Mr. Ward testified at trial |7that he had to pay Keith Guy, a renovation specialist, to complete the interior punch list[2] and the interior woodwork, $9,000.00 *645 and $17,000.00, respectively, as well as other costs incurred by BEI to finish the work under the contracts. However, the only objective evidence in the record is a proposal from Keith Guy indicating that he would charge $4,670.00 for work on the exterior of the house to touch up shutters and mildewed window glazing. There is no evidence that this work was actually performed. Additionally, the trial court determined that Mr. Dali’s testimony was the more credible concerning the work performed on both the exterior and interi- or of the house. Thus, we find no error in the trial court’s dismissal of the reconven-tional demand.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
GORBATY, J., dissents with reasons.

. The interior trim consisted of the wood molding around the ceilings, floors, doors and entrances.

. Mr. Ward went through the interior of the house and made a list of the things that he *645 found were not satisfactorily performed by Dali and wanted Mr. Guy to correct. The list included work on the ceilings, caulking around the wood moldings throughout the interior of the house, and repairs to the custom made wallpaper that Dali’s workers had damaged,