JUDE G. GRAVOIS, Judge.
 

 l2Pefendants, Sizeler Thompson Brown Architects, A Professional Corporation, and Sizeler Thompson Brown Architects Regional Design Group, LLC (both Sizeler defendants are sometimes referred to herein collectively as “Sizeler” or “the Siz-eler defendants”), have appealed a default judgment in the amount of $423,850.70, plus court costs, that was rendered jointly against them in favor of plaintiff, First Millennium Construction, LLC (“First Millennium”). For the reasons that follow, we vacate the judgment and remand this matter for further proceedings.
 

 FACTS AND PROCEDURAL HISTORY
 

 On February 10, 2010, First Millennium filed a Petition for Breach of Contract, Unfair Trade Practices, Damages, and Attorney’s Fees naming as defendants the Sizeler defendants, the Parish of Jefferson, the Jefferson Parish Council (the Parish of Jefferson and the Jefferson Parish Council are sometimes referred to herein collectively as “the Parish”), and Eddie Castelin (“Castelin”), ^allegedly an employee of Siz-eler. The petition states that First Millennium was the general contractor of a building to be built for the Parish in Marrero to be used as a “Head Start” school (“the project”). The petition alleges that either one or both of the Sizeler defendants served as the architect on the project and as the Parish’s authorized representative on the project. Eddie Castelin was the site representative of Sizeler on the project. First Millennium’s contract with the Parish provides for the project to be “substantially complete” within 365 days after the day indicated in the “Notice to Proceed” issued in connection with the project (i.e., within 365 days after March 5, 2008,
 
 *944
 
 or by March 6, 2009), and that failure to complete the project on time would result in liquidated damages in the amount of $600.00 per day having to be paid by First Millennium to the Parish. The petition alleged that the conduct of Sizeler and Castelin resulted in delays in the construction of the project which caused First Millennium to incur damages.
 
 [1]
 
 Specifically, First Millennium alleged that Sizeler’s plans and specifications for the project contained several “errors, discrepancies, and/or ‘holes’ ” which prompted First Millennium to send a number of Requests for Information (“RFIs”) to Sizeler seeking additional information. The petition alleged that Sizeler ignored and/or refused to adequately respond to most of these requests.
 

 The petition further made the following allegations of fault against the Sizeler defendants, to-wit:
 

 ■ The site elevations called for in Siz-eler’s plans and specifications were inaccurate which caused problems with ingress and egress to the rear patios and resulted in drainage catch basins being placed in a hole over two feet deep, resulting in First Millennium having to perform extra work.
 

 ■ The “Tryke path” dimensions and layout and playground dimensions were omitted from the plans and specifications causing numerous delays in the construction.
 

 \4U
 
 The steel beams called for in the plans and specifications interfered with some of the roof trusses.
 

 ■ The steel tubing canopy called for in the plans and specifications “ran into the front porch roof’ and Sizeler’s proposed solution did not solve the problem.
 

 ■ Sizeler unnecessarily required that First Millennium “wrap the exterior sheathing of the entire building with plastic to ‘protect’ the sheathing from the elements,” increasing the cost of construction.
 

 ■ The plans and specifications contained an incorrect water meter size and it took Sizeler “close to thirteen (13) months to get a Change Order signed for [First Millennium] to move forward, which caused many delays.”
 

 ■ Sizeler unnecessarily forced First Millennium to get an engineer to inspect the concrete to report that it was cured in accordance with the plans and specifications.
 

 ■ The plans and specifications did not provide for a sufficient amount of support for the air-conditioning units that were placed on the roof of the building.
 

 ■ Sizeler designed the electrical room too small for the equipment called for in the plans and specifications resulting in a lengthy delay in the project.
 

 In its petition, First Millennium requested a declaratory judgment “that the delays experienced by the Project were not caused by [First Millennium],” and an award for damages it suffered as a result of Sizeler’s and Castelin’s actions, as well as attorney’s fees and any other “legal and/or equitable” relief.
 

 Castelin was served with the petition at his residence. The Sheriffs Office was unable to serve the Sizeler defendants through their respective registered agents
 
 *945
 
 for service of process. However, on March 29, 2010, the Sizeler defendants were purportedly served with the petition pursuant to LSA-C.C.P. arts. 1266(B) and 1261, respectively, through an alleged employee of suitable age and discretion at the place where the business of the Sizeler defendants was regularly conducted.
 

 On April 14, 2010, First Millennium obtained a preliminary default against Sizeler. On April 22, 2010, following a confirmation hearing, judgment was rendered in favor of First Millennium and against Siz-eler confirming the | ¡{preliminary default, ordering Sizeler to “immediately reimburse, indemnify, and hold [First Millennium] and its surety harmless for any ‘liquidated damages’ that [First Millennium] and/or its surety pays to [the Parish] in connection with [the project],” and awarding “actual” damages to First Millennium in the amount of $423,850.37, plus court costs. This appeal followed the denial of Sizeler’s Motion for New Trial.
 

 On appeal, Sizeler contends that the trial court erred in confirming the default judgment because the Sizeler defendants were not properly served with the petition, and because the evidence submitted at the default confirmation hearing was insufficient to establish a prima facie case as to fault and damages.
 

 ANALYSIS
 

 Louisiana Code of Civil Procedure article 1701 provides for the entry of a judgment by default when the defendant in the demand fails to answer within the time prescribed by law. Article 1702 sets forth the procedure for confirmation of a default judgment, stating that a “judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case.” A prima facie case is established, as required for confirmation of a default judgment, when the plaintiff proves the allegations made in the petition, with competent evidence, to the same degree as if the allegations had been specifically denied by the defendant.
 
 Power Marketing Direct, Inc. v. Foster,
 
 05-2023 (La.9/6/06), 938 So.2d 662.
 

 The determination of whether there is sufficient proof to support a default judgment is a question of fact and should not be disturbed on appeal unless it is manifestly erroneous.
 
 Ledet v. Moe,
 
 03-745 (La.App. 5 Cir. 12/9/03), 864 So.2d 643, 644. In reviewing a default judgment, an appellate court is restricted to determining whether the record contains sufficient evi dence to prove a prima facie |6case.
 
 Rhodes v. All Star Ford, Inc.,
 
 599 So.2d 812, 813 (La.App. 1 Cir.1992). Although there is a presumption that the judgment confirming a default is supported by competent evidence, it does not apply when, as in this case, there is a transcript of the confirmation proceeding.
 
 Hickman v. Wm. Wrigley, Jr. Co., Inc.,
 
 33,896 (La.App. 2 Cir. 10/4/00), 768 So.2d 812, 815.
 

 At the confirmation hearing, Richard Walsh, the only person to testify, stated that he is a senior project manager for First Millennium. When asked who were the architects on the project, Mr. Walsh responded “Sizeler, Thomas and Brown” without differentiating between the two Sizeler defendants. Mr. Walsh also stated that “Sizeler” was the Parish’s representative on the project. Mr. Walsh personally dealt with the architect on the project and with employees, as he understood it, of either one of the Sizeler defendants. First Millennium’s contract with the Parish provided that the project was scheduled to be completed within 365 days and that there was a $600.00 per day liquidated damages clause in the contract for every day that the project was not finished past the projected completion date. First Millennium “shut the job down” when the project was approximately eight months behind sched
 
 *946
 
 ule. The delays were caused by a “[l]ack of response from the architect and additional works that they forced us to do that were not part of the contract and mainly they didn’t respond to problems that came up, bad set of plans and slow response to correcting inadequate plans.” First Millennium submitted change orders to Sizeler and Sizeler either did not respond or responded very late. Mr. Walsh further testified:
 

 This job had an excessive amount of RFIs written and submitted and RFI according to the contract is supposed to be submitted and turned back around to you with an answer within three weeks. Some of them lingered on for over a year.
 

 Mr. Walsh estimated there were 112 RFIs in this case.
 

 |7Mr. Walsh testified as to the following examples of conduct by Sizeler that resulted in delays in the project and/or expenses or damages incurred by First Millennium, to-wit:
 

 ■ Although the “Dims Glass board” on the outside of the building could be exposed to the weather, Sizeler made First Millennium wrap the building “in a wrap similar to a Ty-vek wrap” for protection from the weather, which caused a delay of approximately 90 days.
 

 ■ There was a beam that “wouldn’t work” which First Millennium contended was designed wrong. First Millennium submitted an RFI concerning the beam, and after “it went back and forth,” it was determined that Sizeler’s design was wrong and the beam had to be changed.
 

 ■ Once First Millennium fired Caste-lin’s friend as superintendent on the job, Castelin was “intentionally difficult” and made First Millennium do things just to cost First Millennium more money.
 

 ■ The air-conditioning units were placed on the roof, causing the roof beams and joists to sag in the middle. First Millennium sent an RFI to Sizeler citing this problem and Sizeler failed to respond. First Millennium finally went to a Parish official who instructed First Millennium to remove the air-conditioning units from the roof until the problem was resolved. First Millennium did not receive any reimbursement for removing the air-conditioning units from the roof or for changing the bar joists and adding structural steel.
 

 ■ The specifications in the electrical room called for a transformer that was no longer deemed safe and was out of production. The new transformer would not fit in the electrical room, which caused a four-month delay. First Millennium was not compensated for the time spent on reconfiguring the room.
 

 ■ The “elevation [was] always a problem on the job,” requiring things to be formed two and three times, noting that the dimensions on the job were wrong and that the corners of the slab “were sticking up two and three feet.” These problems delayed the job “in excess of four months on that part of the site work.”
 

 ■ The one-inch water meter was incorrect. It took over thirteen months from the RFI and the first request for Sizeler to change the water meter size from a one-inch to a three-inch meter, and that all the piping that was associated with this had to be increased to three-inch piping. In response to a question as to how
 
 *947
 
 long this delayed the project, Mr. Walsh testified: “During that time probably a critical path would show six months.”
 

 ■ Because of the delays caused by Siz-eler, First Millennium incurred damages due to overhead and cost overruns, stating for example the concrete pumps had to come out “two and three times because the pours were stopped and started.”
 

 _yi First Millennium had to pay for portable trailers, toilets and telephones and the salaries of people who were hired for the job, such as the project manager, project superintendent, and project assistant, during the time the job was shut down due to the problems with the electrical room.
 

 Mr. Walsh further testified that he went through the expenses on the job and estimated how many weeks each item delayed the progress of the job. He calculated that the damages incurred by First Millennium attributable to Sizeler’s conduct were $423,850.97. The trial court admitted into evidence a thirty-seven page document entitled “Lapalco Head Start Break Down,” with the coversheet thereof being referred to in Mr. Walsh’s testimony as a “summary sheet,” which contains the cost of various items for the forty-three weeks that the project was allegedly delayed by Sizeler. These items included salaries, insurance, utilities, labor and materials. The trial court then questioned Mr. Walsh regarding the summary sheet. Mr. Walsh testified that First Millennium bid this job based on a projected completion of fifty-two weeks and the costs on the summary sheet represent the time they were delayed and the impact the delays had on the schedule of the job. Mr. Walsh reiterated that he is the senior project manager for First Millennium and does most of the estimating on jobs, and that he was personally involved with this particular project. Mr. Walsh testified that he assisted in compiling the documents attached to the summary sheet and was acquainted with the totals on the summary sheet. Importantly, Mr. Walsh offered no testimony, however, specifically regarding any of the particular documents that were attached to the summary sheet.
 

 A review of the documents attached to the summary sheet indicates that these documents do not entirely support the items listed on the summary sheet. For example:
 

 ■ Although there are three pages attached to the summary sheet listing check numbers and amount of checks written from May of 2009 to | ^February of 2010 purportedly for salaries of the project manager, project superintendent, and project assistant, there are no copies of the actual checks written or any other documents to support the assertion that these amounts were actually paid and whether they were actually paid in connection with the project.
 

 ■ The summary sheet lists payments of over $70,000.00 for various types of insurance, but the only two invoices apparently referencing insurance premiums contained in the documents attached to the summary sheet total only $7,088.00, and there are no supporting documents concerning or explaining these invoices.
 

 ■ The summary sheet lists payments for a job trailer in the amount of $4,152.20, but the only document attached to the summary sheet referencing a modular building shows a one-time charge for a modular building in the amount of $415.22.
 

 ■ The summary sheet lists payments for portable toilets in the amount of $2,646.60, but the only document at
 
 *948
 
 tached to the summary sheet referencing portable toilets shows a onetime charge for portable toilets in the amount of $264.66.
 

 ■ The summary sheet lists payments for dumpsters in the amount of $13,000.00, but the only documents attached to the summary sheet referencing dumpsters are three receipts for dumpsters totaling $975.00.
 

 ■ Attached to the summary sheet are receipts for concrete, but it not possible to determine if these are receipts for concrete during the normal course of the project or whether these charges were due to the alleged fault of Sizeler.
 

 ■ Attached to the summary sheet are some receipts related to rental equipment that appear to reference a job entitled “Mallard Lake Estates.”
 

 ■ The summary sheet contains labor charges in the amounts of $2,000.00, $4,000.00, $4,500.00, and $24,545.00, but there are no supporting documents attached to the summary sheet concerning or explaining these labor charges.
 

 ■ There is a charge on the summary sheet for building wrap in the amount of $6,000.00, but there are no supporting documents attached to the summary sheet concerning or explaining this item.
 

 ■ Although Mr. Walsh testified that First Millennium did not receive any reimbursement for removing the air-conditioning units from the roof or for changing the bar joists and adding structural steel, the summary sheet and attached documentation do not reference any charges for these items.
 

 Thus, after a thorough review of the entire record and the exhibits introduced, we are unable to find sufficient evidentiary support for the “actual” damages allegedly incurred by First Millennium and awarded by the trial court.
 

 | inMoreover, although in his testimony Mr. Walsh repeatedly referred to the lack of response by Sizeler to First Millennium’s numerous RFIs, no RFIs or responses thereto were submitted by First Millennium at the confirmation hearing. Consequently, without the RFIs referred to in Mr. Walsh’s testimony, we are unable to link the alleged lack of response by Sizeler to the delays in the progress of the job.
 

 Our review of the default judgment rendered in this case is limited to determining whether the record contains sufficient evidence to prove a prima facie case.
 
 Rhodes v. All Star Ford, Inc., supra.
 
 After thoroughly reviewing the record, for the reasons stated above, we find that First Millennium did not present sufficient proof at the confirmation hearing to establish a pri-ma facie case as to the fault of Sizeler as alleged in the petition and especially as to the nature and extent of the damages alleged in the petition and awarded to First Millennium in the default judgment. Accordingly, we find that the default judgment in this case was improperly rendered. As such, a discussion of Sizeler’s remaining arguments in this appeal is pre-termitted.
 

 CONCLUSION
 

 For the foregoing reasons, the April 22, 2010 default judgment rendered in favor of First Millennium is hereby vacated and this matter is remanded to the trial court for further proceedings. Costs of the appeal are assessed to First Millennium.
 

 
 *949
 

 JUDGMENT VACATED; MATTER REMANDED
 

 [1]
 

 . The petition also asserted damages for defamation and unfair trade practices, which were denied by the trial court at the default confirmation hearing and are not involved in this appeal.